The opinion of the Court aw delivered by
O’Neall, J.
Before discussing the questions which have been here made in this case, it will be well to premise that the *14 defendant was the aunt of the whole blood of her intestate. That she was, in 1816, a widow residing in .Mississippi, with a family of young children, possessed, however, of a sufficient competency. That the intestate being in .bad health, and determined never to marry, and desirous that his aunt and her children should, after his death, enjoy his whole estate ; either of his own mere motion, or at her solicitation, visited h'er with -a view of removing her and her family to this State. On arriving there he found her either reluctant to 'remove, or surrounded with such difficulties as, in her estimation, rendered it imprudent to do so, until they were removed. Amongst other things, her son, Vernon C. Hicks, then a lad in his sixteenth year, was unwilling to leave Mississippi: the slaves belonging to her deceased husband’s estate, were also to be removed, and for them she was liable .to account for as much hire as could be obtained in Mississippi, which she could not expect to realize in South-Carolina. To remove these difficulties and to incluce his aunt and her family to accept ‘ his invitation and remove with him -to this State, it is alleged, he agreed to pay Vernon C. Hicks, on his arriving at 2i years of age, $>3000, if he would come with him to South-Carolina; and that he promised his aunt, the defendant, as much hire for her slaves as she could obtain in Mississippi. On these promises and assurances, the defendant, the son and her family, returned to this State with the intestate, and became part of his family,' . During his lifetime he had the services of the slaves of the defendant, on the contract made in Mississippi. He maintained the defendant and her children, and educated her daughters. After he .'had taken the defendant home, he appears to have treated and regarded her as the head of the whole family. He called- her mother, gave her up the entire management of his household, and placed at her disposition his cash, In' 1822, in his last illness, he repeated to his aunt his desire, that she and her children should enjoy his property: said, that he had been legally advised that she was his heir .at law, and that it was therefore unnecessary to make a will: arid requested her, out *15 of the first funds, to pay to Vernon C. Hicks, the sum of $3000, which he had promised to pay him if he would come with him to South-Carolina. The complainants are the .representatives of an aunt of the half blood, to whose claim to recover as dis-' tributees of his estate, no objection has been made before us, and, upon which, we intend' not to be understood as giving any opinion. This aunt of the half blood appears to have been, 'if not an actual stranger to the intestate, at least one for whom he entertained no affection, and for whose interest he would not jealously guard his estate from incumbrances in favor of relations, whom he had adopted as mother, brother and sisters. After having thus possessed ourselves of the whole circumstances, in reference to which the main questions in this case must be considered, I will proceed to notice, in their order; 1st. The $3000 paid by the defendant to Vernon C. Hicks, agreeable to the promise made by the intestate to him. 2d. The allowance of Mississippi hire for the slaves of Claudius P. Hicks, deceased. 3d. The allowance for the maintenance of the defendant and her family, and the education of her daughters. 4th. The allowance of commissions on her receipts and expenditures on the estate of her intestate.
1. It is objected that the sum of $3000 ought not to have been paid to Vernon C. Hicks. 1st. Because the contract as proved was without consideration. 2d. That it was void, being within the Statute of Frauds : and 3d. That the contract was not proved.
It is perfectly clear that to constitute a consideration sufficient to support an executory contract, it need not be an exact quid pro quo. Any thing which is to benefit the party making the promise^ and which he could not otherwise obtain, or which puts the party to whom the promise is made, to any trouble, inconvenience or loss, will prevent the contract from being nudum pactum. This has not been controverted in the argument :■ but it is said, that the mother 'had the right to require and compel her son to remove, and that, therefore, neither his consent or removal could be a consideration. I have no doubt *16 that a mother, as well as a father, has the right to the custody of the person, and the services of a child until twenty-one. But this general rule is subject to some qualifications. A child resident in this State, and entitled to a part of his deceased father’s estate in .it, after fourteen years of age could not, even by his mother, be taken out of it against his will. In such a case, Chancery would appoint a guardian for him and protect him from removal. Such, I presume, is the law of Mississippi as well as of this State. So that, .in this point of view, his consent and removal might have been a sufficient consideration, even although the mother had attempted to compel him to do so. But although during the minority the father, or mother, is entitled to the person and services of a child, it does not follow that every contract made for an act to be done by him is, therefore, nudum factum. They may waive their right to both; and if they choose to do so, he is as much a free agent, as to what he will demand for his services, as he is after twenty-one. True, he cannot bind himself by contract, except for necessaries, but this is his protection and not that of an adult who contracts with him. If he performs his part of the contract, he has a perfect legal right to demand-the performance of the other part from the other party. Let the case before us be tested by these principles. The mother declines to exercise the parental authority to require her son to remove: he was then perfectly free both in morals and in law to remain in Mississippi, or remove to South-Garolina: he preferred the former: to induce him to adopt the latter, the intestate promised to pay him $3000, and' upon this promise he does remove. This Would seem to b¿ a sufficient consideration. It is also a rule of universal application, that the consideration, on which a promise is founded, need not in all cases proceed from the party for whose benefit it is made. For illustration, let it be supposed that A to benefit B, sells O a horse, and C in consideration of such sale, promises to pay B $ 100, the consideration will sustain the promise. In the case before us, as I understand the testimony, the mother declined to remove to this State, unless *17 the intestate could induce her son to consent to-remove. Her removal was then in part the consideration óf the promise to -her son: and if she chose to make,her removal a benefit to-him, she had the right to do so, and a promise tó him, founded’ on that consideration, is as good as if he had himself done the act, upon which the price of it was. to be paid by the intestate.
The'4th section of the Statute of Frauds provides, that “no action shall be brought upon any agreement that is not to be performed within the space of ohe year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing,” &ck
In the construction’ of this, as well as other clauses of the Statute, much refinement has, I know,-been resorted to, and, in some cases, distinctions -have been taken which have almost amounted to a repeal of it. I have no disposition to trench, in any respect, upon the written law. Construing it upon plain and practical principles of common sense, it shall be, so far as I am concerned, the rule of decision. In the construction of the clause before us as applicable to this case, I am not aware of any difficulty whatever. This clause of the Statute was intended to be applicable to contracts wholly executory and not intended, on either part, to be performed within a year. In other words, both the consideration and the promise must be executory, and neither to be done or performed within a year. If the consideration is executed at the time of the contract made, or intended to be and is performed within a year, the contract is not within the Statute. If a corltract, not to be performed within a year, is, after the expiration of the year, entirely executed by one party at the request, or by the consent, of the other party, then the promise to pay for this performance cannot be within the Statute. The party, for whom it • is done, has waived that protection, and has put himself oh the footing of a debtor for a past and executed consideration. In. the case of Boy dell vs. Drummond, il East, 152, a case is put of goods sold and delivered' on a credit of thirteen months, and Lord Ellenborough in reference to it, as not being within the Statute,. *18 says: “In that case the delivery of the goods, which is supposed to be made within the year, would be a complete execution of the contract on. the one part; and the question of consideration only, would be reserved to a future period.” In the case of Mavor vs. Pyne, 12 Eng. C. L. R. 41, it was held that, if a party agree to take a work, which is to be published in eighteen numbers'at intervals.of two months, and after receiving several numbers, refuses to take ahy more, and.also to pay for those which he has had, an action will lie for the price,of the latter, and the Statute of Frauds does not 'apply, although the original contract was not to be executed within a year; for the law, in such cases, will imply a further contract to pay for each number as it is delivered. In the case of Bracegirdle vs. Heald, 1 B. and Al. 726, Lord Ellenborough says, “will an inchoate performance or part execution satisfy the terms of -the Statute? I am of opinion it will not, and that there must be a full, effective and complete performance.” In the same case, Abbott J. .says: “The,case put in argument, of an agreement for goods to be delivered by one party in six months, and to be paid for in eighteen months, being after more than a year has elapsed, 'is distinguishable on this ground,, that there, all that is on one side to be performed, viz: the delivery of the goods.istobe done within a year; whereas here, the service, which is the thing to be' performed by the plaintiff,-cannot possibly be completed within that period.” Those authorities fully sustain the positions which I have- assumed, and it only remains to be seen whether, the contract próved, according to them, is, or is not, within the-Statute. The intestate promised to pay, at twenty-one years of age, to Vernon C. Hicks $3000, if he would come with him to Soutli-Carolina. -The removal to this State was what was to be performed by Vernon C. Hicks. ’ It was capable of being and was actually performed within a year of the 'time the contract was made. It was not, therefore, a contract within the Statute; If it had originally been, and performance was made at the request, or by the consent of the intestate, I should have held that the executory character of the contract *19 was changed, and that it became, on the part of. the intestate, debitum in 'presentí, solvendum in futuro. And in this point of view, his death bed declaration would and ought to be regarded as an admission of a subsisting debt.
When an executor or administrator pays a debt which he thus recognizes as a debt of his testator or intestate, it is enough on an account by him, to shew the payment. The legal presumption is that the debt is the debt of the deceased. A contrary presumption can only be raised by showing fraud and collusion between the executor or administrator and the creditor, — or, in law, that the debt was not a legal subsisting debt, — • or, in fact, by creating some suspicion of its truth and justice. This proof must necessarily come from the party objecting to the payment, before the executor or administrator can bé put to proof of the bona fides of the debt. In the case before us, the administratrix paid the debt supposed to be due, and, on the proof which she had before her, it was a good and subsisting debt in law against her intestate. This was enough to justify her payment: and it would not be enough now to subject her to an account to the heirs, for that debt, to say that the proof is not exactly enough to satisfy us of the nature and extent of the promise. On the other hand, before we could disallow the payment, we must be satisfied that the debt was a mere pre-tence. But taking up the question as an original proposition to establish the debt for payment out of the estate, I am satisfied the debt should be allowed.
Before, however, I proceed to notice the proof, it is necessary to dispose of some preliminary matters. It is said that the Chancellor has decided that the contract between the deceased and Yernon C. Hicks had not been satisfactorily proved, and has therefore disallowed it; and that his decision, on facts, is like that of a jury, not examinable on appeal, unless manifestly against, or rather without evidence to support it. This is true where the evidence is given to the Chancellor viva voce by the witnesses in Court. In such cases, an infinite variety of circumstances enables him to decide more correctly, on the credit *20 of the witnesses, and the weight of the testimony, than we can. But where the testimony is altogether written, the reason of the rule ceases, and with it the rule itself must cease. So, where the Commissioner examines the witnesses, his decision on the facts should be generally adopted by the Chancellor ; but he has the right to examine and correct the conclusions of the Commissioner, where he thinks they are incorrect. In such cases of difference of opinion between the Chancellor and the Commissioner upon the facts, this Court is bound to examine the Chancellor’s decision and either adopt or reject it, as the facts may appear to warrant. On this question the testimony is in writing, and upon it the Commissioner, who examined the witnesses, thought the contract was fully proved. The Chancellor came to a different conclusion. The only witness, (whose testimony is regularly before us,) who proved this contract, was the daughter of the defendant, and a sister to Yernon C. Hicks. She was eight, nine, or ten years old, when she says she heard the contract made in Mississippi. ’ At different times afterwards she says she heard the deceased admit that he had made this contract: and on his death bed she heard him direct the money to be paid. If this witness is to be credited, it appears to me the contract is clearly and fully proved. Her credit is assailed, first, on account of her tender years at the time the contract was made, and it is hence argued that she could not now recollect it. But I have no doubt that facts and circumstances, occurring in infancy, and attended by circumstances calculated to arrest the attention, are longer and better remembered than events which happened in maturer years. The witness was at that age when every thing novel was likely to make a lasting impression. She saw then, for the first time, her cousin Yer-non; her father was dead; her mother was about breaking up and removing: all these circumstances were calculated to fix on a young and tender mind, every thing connected with them, with a most lasting impression. I would sooner believe a story thus emanating from the recollections of a child, than many a well digested tale which is told on the recollection of age from *21 the occurrences óf manhood. But her proof does not rest on the recollections of infancy ; it is sustained by repeated admissions of the contract by her cousin Vernon; and, above all, by his solemn admission, at a time when with him time was about to cease and eternity begin. In the second place, her testimony is' assailed on account-of some alleged discrepancies in it. These, however, were so slight that I cannot permit them to overthrow the testimony of a witness whose credit-was not otherwise impeached. Neither the Commissioner or Chancellor attached any consequence to them, and with them before him, if the Commissioner, who took her testimony, thought her still worthy of credit, I will adopt his conclusion. . On the whole, I am satisfied that the Commissioner was correct in allowing the defendant a credit for the sum of $3000 paid to her son Vernon C. Hicks : and that the exception of the complainants to his report, in this respect, was improperly sustained by the Chancellor.
2. The contract to allow for the hire of the slaves of the estate of Claudius P. Hicks, deceased, as much as could be obtained in Mississippi, is fully proved by the evidence of Mr. Murphy, and Mr. Driggers. It is true that Mr. Murphy does not prove that he heard the proposition regularly made by Vernon to Mrs. Hicks, and by her accepted, but he proves that which is exactly equivalent to it. He proves that Vernon, to induce his aunt to remove, in her presence said to him that he would pay her for the hire of the slaves as much as she could get for them in Mississippi. She afterwards did remove, and allow him to haive the services' of the slaves. This was her assent to his pr°Position) and made, in .the language of the law, tlm aggregatio mentium necessary to a contract. ' But it is said how long was this contract to last 1 From year to year, until one or the other of the parties chose to end it, is the only answer. Like- other contracts of hiring, it Vras a contract for the ensuing year'. At the end of that- time, if nothing was said about other terms, it would be presumed- that the next year’s hire was on the same terms and so on of every succeeding one. *22 In 1821 and 1822, Mr. Driggers lived with the deceased, and he states that he told him, that he had promised his aunt as much hire for the negroes as they were worth in Mississippi. I presume that this conversation was in one or the other of these years, and if so, it proves that the contract of hiring, on its original terms, was continued down to the time of his death. Regarding the contract of hiring as originally made for the year 1817, and its continuance as a new contract, made every year on the terms of the preceding one, the case in this respect is not at all affected by the provisions of the 4th section of the Statute of Frauds. But considering it as an entire contract made in Mississippi and applying to the whole time for which the deceased had the services of the slaves, there was a complete performance of it on the part of the defendant with the consent of intestate, and to such a case the Statute is inapplicable. The reasons which I have given for my judgment on the first branch of this case, apply with equal force to this; and need not be again repeated. I am, therefore, satisfied that the Commissioner was correct in allowing Mississippi hire for the slaves; and that the exception of the complainants, to this part of his report, ought to have been everruled.
3. The defendant and her family, at the request of the deceased, became part of his family. He treated her as his mother, Yernon C. Hicks as his brother, and the daughters as his sisters. He considered them as the heirs of his estate. Under such circumstances, did he intend to charge for main-tainance, or education? It is obvious that he did not. That which was originally intended as a gratuity can never after-wards be turned into a charge. I am, therefore, satisfied with the Chancellor’s decision in this respect.
4. The defendant was entitled to commissions, unless it was shewn that she had failed to make regular annual returns to the Ordinary. In such years as she failed to make returns, she was entitled to no commissions. On returns regularly made, she was entitled to commissions. So, if she had not made a single return, she was entitled to commissions for paying *23 over the balance found in her hands and decreed to be paid to the complainants. The proof of her failure to make regular returns ought to have been made by the complainants. The Ordinary’s office was accessible to them, and it would have furnished conclusive evidence how the fact was. In the absence of such proof, it was to be presumed that she had done, her duty, and the Commissioner ought to have allowed her commissions on the whole estate. This exception of the defendant ought, therefore, to have been sustained.
On all the other questions discussed in the decree, we concur with the Chancellor, except as to the competency of Vernon C. Hicks, and, as connected, therewith, the subject matter of the defendant’s 10th exception. He had not' the slightest legal interest in relation to the crop of 1822, with which his mother was charged, and to show the amount and disposition of which he was offered. His testimony ought, therefore, to have been heard on this point. It is, therefore, ordered and decreed, that the decree of the Chancellor.be modified according to the principles laid down in. this opinion, and that the costs of this suit be paid out of the estate.
Johnson and Harper, JJ. concurred.

Decree modified.